UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARANEH VESSAL, <br><br> Plaintiff, <br><br> v. <br><br> ALARM.COM, INC.; MONITRONICS INTERNATIONAL, INC.; and JOHN DOES 1-10. <br><br> Defendants. | CIVIL COMPLAINT <br><br> CASE NO. 1:17-cv-02188 <br><br> DEMAND FOR JURY TRIAL |

**COMPLAINT**

NOW comes TARANEH VESSAL ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of ALARM.COM ("Alarm.com"), MONITRONICS INTERNATIONAL, INC. ("Monitronics"), and JOHN DOES 1-10 ("Authorized Dealers") (collectively, "Defendants") as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") under 815 ILCS 505/1 for Defendants' unlawful practices.

**JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States and supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conducts business in the Northern District of Illinois and a substantial portion the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

4. Plaintiff is a natural person over 18 years-of-age residing in Oak Brook, Illinois, which falls within the Northern District of Illinois.

5. Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6. Alarm.com provides interactive security and home alarm monitoring solutions for residential and commercial properties across the country. To generate subscribers, Alarm.com relies on a network of third-party authorized dealers to make telemarketing calls to consumers across the country, including in Illinois, and then enters into contractual relationships and services the relationships with new customers that result from those telemarketing calls. Organized under the laws of the State of Delaware, Alarm.com's principal place of business is located at 8281 Greensboro Drive, Suite 100, Tysons, Virginia.

7. Alarm.com is a "person" as defined by 47 U.S.C. §153(39).

8. Monitronics provides security alarm monitoring and related services to residential and business subscribers across the country. Monitronics also relies on a network of third-party authorized dealers to make telemarketing calls to consumers, offering its services. Monitronics' headquarters are located at 1990 Wittington Place, Farmers Branch, Texas, and it regularly solicits consumers located in Illinois.

9. Monitronics is a "person" as defined by 47 U.S.C. §153(39).

10. Authorized Dealers are third-party solicitors that made some of the outgoing phone calls to Plaintiff complained of, offering the services of Monitronics and Alarm.com.

11. Authorized Dealers are each a "person" as defined by 47 U.S.C. §153(39).

12. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all time relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

13. Plaintiff's cellular phone was registered on the Do-Not-Call Registry many years ago, and she renewed her registration around March 2016.

14. Shortly after this renewal in March 2016, Plaintiff began receiving calls from Defendants to her cellular phone, (312) XXX-8257.

15. At all times relevant, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in 8257. Plaintiff is and has always been financially responsible for the cellular phone and its services.

16. Defendants have used a variety of phone numbers when placing calls to Plaintiff's cellular phone, including but not limited to: (412) 465-1133, (817) 665-8325, (512) 425-0271, (443) 681-5711, (312) 465-3520, (312) 653-0515, (530) 309-0192, (518) 418-7004, (724) 512-8026, (813) 252-2332, (602) 197-2928, (216) 164-6484, (949) 261-2111, (216) 164-6484, (312) 690-7336, (239) 872-8829, (312) 436-1280, (947) 333-9083, (516) 874-6336, (401) 200-8667, (407) 874-1110, (424) 343-8298, (430) 803-0538, (424) 343-8298, (440) 252-9577, (312) 982-7375, (281) 710-0060, (209) 407-5827, (813) 682-1406, (330) 708-1480, (347) 899-4282, (470) 298-3002, (617) 944-9569, (430) 803-0538, (424) 343-8298, (760) 209-8253, (440) 252-9577, (720) 450-9606, (424) 356-2554, (530) 982-0028, (701) 805-0475, (702) 359-3885, (717) 510-9668, (312) 724-6393, (540) 628-9534, (803) 573-1058, (760) 209-8253, (419) 509-0381, (203) 760-0128,

3

(217) 438-0007, (703) 626-1287, (309) 898-9009, (213) 395-9083, (313) 209-6225, (407) 874-1118, (650) 935-7220, and (559) 318-2040.

17. Upon information and belief, the aforementioned phone numbers are regularly utilized by Defendants to make outgoing calls to consumers they are soliciting for business.

18. Prior to receiving their phone calls, Plaintiff was not aware of what Defendants were or why they would be calling her. Plaintiff was repeatedly confused on the solicitation calls, often questioning the Authorized Dealers as to why they are calling her and who they are calling on behalf of.

19. After speaking with Defendants, Plaintiff discovered that they were trying to solicit her to purchase their "3-in-1 wireless home security system."

20. All of the calls were from Defendants offering to sell their products and services.

21. Monitronics and Alarm.com do not sell their services directly to consumers, but rather partner with the Authorized Dealers throughout the country.

22. Monitronics and Alarm.com charge the Authorized Dealers a fee for each consumer account that the dealer maintains with Monitronics' and Alarm.com's services.

23. Monitronics and Alarm.com control details regarding the Authorized Dealer's sale, installation, maintenance, and support of the home security systems they solicit to consumers on their behalf.

24. Monitronics and Alarm.com also exercise control over these dealers by retaining the right to discipline and terminate these relationships when a dealer violates the TCPA.

25. Plaintiff has been contacted on her cellular phone from a handful of Authorized Dealers, including but not limited to: American Home Security, American Security Services, Central Security Group, Honeywell, United Security, and Bayside Security.

26. All of these Authorized Dealers either informed Plaintiff that they were calling on behalf of Monitronics, or alternatively, when Plaintiff asked for their website address, they responded with Alarm.com.

27. Plaintiff is unaware as to how Defendants got her information, as she was not interested in obtaining their security services.

28. When Plaintiff answers calls from Defendants, she experiences a pre-recorded message offering her options to either opt out or to speak with a representative.

29. Plaintiff has opted out through Defendants' prompts on a number of occasions, including but not limited to the following dates and corresponding phone numbers:

| Date | Phone Number |
|---|---|
| March 22, 2016 | (512) 425-0271 |
| May 28, 2016 | (813) 252-2332 |
| June 2, 2016 | (949) 261-2111 |
| July 20, 2016 | (430) 803-0538 |
| August 10, 2016 | (760) 209-8253 |
| August 25, 2016 | (540) 628-9534 |
| August 29, 2016 | (760) 209-8253 |
| September 14, 2016 | (213) 395-9083 |
| September 23, 2016 | (650) 935-7220 |

30. Plaintiff has also spoken with a representative on multiple occasions, and has repeatedly demanded that Defendants remove her phone number from their call lists and stop contacting her.

31. For instance, in July 2016, Plaintiff spoke with a representative from United Security, to whom she stated, "I asked twice to be removed, why are you calling me?" and "Remove me from your list." United Security's representative stated, "I will take you off the list," and "You will be removed from our database."

32. Plaintiff has also spoken with a representative named "Jen" from Central Security Group, to whom she stated, "Don't call me again." Jen responded by saying "I'll put you on the list right now."

33. On September 14, 2016, Plaintiff spoke with another Authorized Dealer, and stated," I want to be removed. I keep asking. What does it take to be off the list?"

34. On September 27, 2016, Plaintiff spoke with a representative named "Jonas" from American Security Services. Jonas told Plaintiff that he was calling on behalf of Monitronics and she told him that she was "not interested."

35. On October 19, 2016, Plaintiff spoke with a representative named "Julia" from Honeywell, to whom she stated, "I asked to be removed from your system and you guys keep calling me."

36. On September 29, 2016, Plaintiff spoke with a representative named "Jason" from American Home Security, to whom she stated, "I didn't ask you to call me." Jason responded by saying "Most of our customers felt the same way." Plaintiff then told him, "Stop calling me. I asked to be removed." Jason told her, "We'll take you off our list."

37. Despite Plaintiff's countless efforts to opt out as well as demanding that the calls stop, Defendants continued to regularly call her cellular phone throughout 2016.

38. Defendants have also called Plaintiff's cellular phone multiple times in the same day.

39. Plaintiff has received not less than 75 phone calls from Defendants since asking them to stop calling.

40. Frustrated over the persistent calls, Plaintiff spoke with Sulaiman regarding her rights resulting in costs and expenses.

41. Plaintiff has suffered financial loss as a result of Defendants' unlawful actions.

42. Plaintiff has been unfairly harassed by Defendants' actions.

43. Plaintiff has suffered concrete harm as a result of Defendants' actions, including but not limited to, invasion of privacy, aggravation that accompanies solicitation telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the

never-ending calls, increased usage of her telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### (AGAINST DEFENDANTS)

44. Plaintiff repeats and realleges paragraphs 1 through 43 as though fully set forth herein.

45. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

46. Defendants used an ATDS in connection with their communications directed towards Plaintiff. The pre-recorded message that Plaintiff experienced during answered calls before either attempting to opt out or being connected to a representative, is instructive that an ATDS was being used. Similarly, the frequency and nature of Defendants' calls are indicative of an ATDS.

47. Defendants violated the TCPA by placing at least 75 phone calls to Plaintiff's cellular phone using an ATDS without her consent. Plaintiff was never interested in any of these home security services, yet, she was still bombarded with phone calls on a daily basis. Any consent Plaintiff *may* have given to Defendants was explicitly revoked by her incessant demands to cease contact, as well as her multiple efforts to opt out using the prompts provided by Defendants in their solicitation calls.

48. The calls placed by Defendants to Plaintiff were regarding solicitation and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

49. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendants are liable to Plaintiff for at least $500.00 per call. Moreover, Defendants' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff, TARANEH VESSAL, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendants from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (AGAINST DEFENDANTS)

50. Plaintiff restates and realleges paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff is a "person" and "consumer" as defined by 815 ILCS 505/1(c) and (e) of the ICFA.

52. Defendants' solicitation calls to Plaintiff are "trade" and "commerce" as defined by 815 ILCS 505/1(f) of the ICFA.

53. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or

>omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

54. Defendants violated 815 ILCS 505/2 by engaging in unfair and deceptive acts or practices in contacting Plaintiff. It was unfair for Defendants to relentlessly contact Plaintiff through means of an ATDS when she not only orally requested that they no longer do so on a number of occasions, but also opted out via Defendants' prompts countless times as well. Plaintiff notified Defendants that she was not interested in its home security services and to stop calling her. Defendants ignored Plaintiff's requests and unfairly continued to systematically contact her at least 75 times after she made her requests. Following their characteristic behavior in placing voluminous solicitation phone calls to consumers, the calls here were placed with the hope that Plaintiff would succumb to their harassing behavior and purchase Defendants home security services.

55. Defendants have also placed multiple calls to Plaintiff's cellular phone in the same day, even after being told to cease calling. Placing multiple calls in a short amount of time is extremely harassing behavior that amounts to unfair practice, especially after Plaintiff opted out numerous times in addition to demanding that Defendants remove her phone number from their lists and stop calling her.

56. Furthermore, Defendants used over 60 different phone numbers with a wide-array of area codes when contacting Plaintiff's cellular phone. This is extremely deceptive behavior, since Defendants are attempting to trick Plaintiff into answering their phone calls and ultimately signing up for their security services. Even after the countless times Plaintiff opted out and informed Defendants that she did not want to receive any more phone calls, Defendants then doubled-down on their solicitation efforts by using different phone numbers and different Authorized Dealers to confuse Plaintiff into answering their calls.

57. Defendants even acknowledged that their behavior was deceptive. For example, when Plaintiff answered a phone call from American Home Security and informed it that she never asked it to call her, its representative Jason, told Plaintiff "Most of our customers felt the same way." This response illustrates how Defendants obtain business by harassing customers into submission. Defendants' modus operandi includes placing an incessant amount of phone calls with the belief that the consumer will eventually succumb to the harassment and purchase their security services.

58. Defendants also unfairly and deceptively lied to Plaintiff when they assured her that they would take her off their lists and cease their phone calls. Plaintiff constantly told Monitronics' and Alarm.com's Authorized Dealers to remove her phone number from their call lists and to stop calling her. Defendants often responded using various language, such as "I will take you off the list," "You will be removed from our database," "I'll put you on the list right now," and "We'll take you off our list." These comments were continuously relayed to Plaintiff, but yet, Defendants phone calls persisted, which conveys their deceptive and unfair behavior in defying their assurances.

59. The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendants.

60. The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

61. As pled in paragraphs 39 through 43, Plaintiff has suffered actual damages as a result of Defendants' unlawful solicitation practices. As such, Plaintiff is entitled to relief pursuant to 815 ILCS 505/10a. An award of punitive damages is appropriate because Defendants' conduct was

outrageous, willful and wanton, and showed a reckless disregard for the rights of Plaintiff. Plaintiff had not used Defendants' security services in the past, but yet, she was still attacked with solicitation phone calls even after notifying it that she was not interested in its services and to stop calling her. Despite Plaintiff's numerous demands and efforts to opt out, Defendants continued to violate the law by engaging in a phone call campaign against her. Upon information and belief, Defendants regularly engage in the above described behavior against consumers in Illinois and for public policy reasons should be penalized.

WHEREFORE, Plaintiff, TARANEH VESSAL, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendants from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: March 21, 2017                                    Respectfully submitted,

s/ Nathan C. Volheim                                     s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. #6302103                         Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff                                    Counsel for Plaintiff
Admitted in the Northern District of Illinois            Admitted in the Northern District of Illinois
Sulaiman Law Group, Ltd.                                 Sulaiman Law Group, Ltd.
900 Jorie Boulevard, Suite 150                           900 Jorie Boulevard, Suite 150
Oak Brook, Illinois 60523                                Oak Brook, Illinois 60523
(630) 575-8181 x113 (phone)                              (630) 575-8181 x110 (phone)
(630) 575-8188 (fax)                                     (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                                 thatz@sulaimanlaw.com