UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARANEH VESSAL, | |
| Plaintiff, | Case No. 1:17-cv-02188 |
| v. | Hon. Sharon Johnson Coleman |
| ALARM.COM INCORPORATED, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT ALARM.COM'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW comes TARANEH VESSAL ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., responding to ALARM.COM INCORPORATED's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint, and in support of states as follows:

### I. INTRODUCTION

Defendant's Motion to Dismiss attempts to deflect this Court's attention from the unfair and deceptive acts Defendant repeatedly committed upon Plaintiff. Defendant attacks the legitimacy of Plaintiff's claims under the Telephone Consumer Protection Act ("TCPA"), arguing that it did not have "anything to do with such calls." *See* Defendant's Motion at 1. As will be expounded upon below, Defendant regularly engages in these illegal activities directly through its authorized third-party dealers ("dealers"). Defendant has contracts with these dealers and controls the details surrounding its dealers' sale, installation, maintenance, and support of Defendant's home security systems to consumers. Due to the fact that Defendant is aware of its dealers' unlawful behavior, it makes a secondary argument that Plaintiff has not plead "calculable or

1

measurable" damages under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *Id.* at 2.

Plaintiff has clearly and properly plead her TCPA and ICFA claims under the necessary notice pleading standard, and for the reasons discussed below, Defendant's Motion to Dismiss Plaintiff's Amended Complaint should be denied in its entirety.

<u>ARGUMENT</u>

A. <u>LAW APPLICABLE UNDER FRCP 12(b)(6)</u>

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997).

B. **PLAINTIFF HAS PROPERLY PLEAD A FACTUAL CONNECTION BETWEEN THE ALLEGED CALLS AND ALARM.COM.**

2

Plaintiff registered her cellular ("cell") phone on the Do-Not-Call ("DNC") Registry many years ago, and renewed her registration in approximately March 2016. *See* Plaintiff's Amended Complaint ¶9. Shortly thereafter, Plaintiff began receiving calls to her cell phone from dealers soliciting her to purchase Defendant's home security system. *Id.* at ¶10. Plaintiff never provided Defendant nor its dealers with consent to contact her, and even notified a number of representatives to stop contacting her, as well as opting out through the dealers' automated prompts. Defendant's dealers even promised that they would remove her number from its call list and would stop calling her. *Id.* at ¶¶28, 30, 35. Despite her efforts and Defendant's assurances, Plaintiff still received not less than 75 calls from dealers attempting to sell Defendant's security system. *Id.* at ¶18, 21, 24, 26-28, 30, 32, 33, 36, 37, 39. Every single one of these dealers was attempting to sell a "3-in-1 wireless home security system," and every call sounded suspiciously similar. *Id.* at ¶¶19-20. Furthermore, all of the above-described phone calls also occurred after Plaintiff registered her telephone number with the National DNC Registry. During some of these calls, Plaintiff was even told by Defendant's dealers that its website address is "Alarm.com," or that it was calling from "Monitronics," which as will be established, is one of Defendant's contractual dealers. *Id.* at ¶¶23, 33-34. Defendant is attempting to mask its identity and argues that Plaintiff has alleged a "vast swath of calls that appear to have had nothing to do with [it]." *See* Defendant's Motion at 4. Although Defendant did not physically place the phone calls, in order to fully understand Defendant's involvement in this solicitation campaign, the contractual relationship it has with its dealers must be exposed.

Defendant is a publicly traded company that sells wireless home-security monitoring systems. *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.,* 2017 U.S. Dist. LEXIS 69307 at *5. Defendant provides cloud-based home automation, monitoring, and security services. *Id.*

3

Defendant uses a network of 6,000 third-party security system dealers to sell subscription services. *Id.* These dealers pay Defendant an activation fee and monthly service charge for each of subscription sold, and Defendant provides them with resources and support. *Id.* Defendant encourages dealers to use the "Alarm.com" logo and to include the slogan, "powered by Alarm.com," on their websites. *Id.* at 6. Since at least 2012, Defendant has also drafted scripts for dealers to use when making telephone calls to potential customers. *Id.* To reward these dealers, Defendant also has a "Premier Partner Program" which provides high-performing dealers with additional sales and marketing tools, a marketing allowance, and an opportunity to participate in Alarm.com's Customer Lead Service ("CLS") program. *Id.* Defendant provides these dealers with leads on potential customers that inquire about Defendant's products and services through its website or a customer service representative. *Id.* These potential customers' numbers are compiled in Defendant's CLS database. *Id.* Defendant highlights its strong relationship with its dealers by promoting them on its website. *Id.* at 7. Furthermore, Defendant supports the dealers through a "partner portal," enabling them to create customer accounts, access subscriber information, and receive support, documentation, and training. *Id.* For example, See "Dealer Program Agreement," discussed in Plaintiff's Amended Complaint ¶¶33-34, between Defendant and Monitronics, one of the several dealers Defendant has partnered with, which provides:

> "Alarm.com has entered into agreements with independently owned and operated security services dealers who market, sell, install and service residential and/or commercial security, monitoring, automation and structured wiring products (each an "ADC Dealer")"
>
> "Alarm.com has authorized the ADC Dealers to market and sell Alarm.com Services…"
>
> "The assignment by an ADC Dealer of any rights or obligations under an ADC Dealer Agreement requires the advance written consent of Alarm.com"
>
> Alarm.com, Inc., Securities Registration Statement (Form S-1/A) (June 19, 2015).

Additionally, in a June 15, 2015 SEC filing, Defendant describes its relationship with its dealers as follows:

> "We rely on our service provider network to acquire additional subscribers, and the inability of our service providers to attract additional subscribers or retain their current subscribers could adversely affect our operating results. Substantially all of our revenue is generated through the sales of our platform and solutions by our service providers, and our service providers are responsible for subscriber acquisitions, as well as providing customer service and technical support for our platform and solutions to the subscribers."
>
> Alarm.com Inc., Amendment No. 2 to Form S-1: Registration Statement (Form S-1) (Jun. 15, 2015).

It is evident that Defendant controls the details surrounding its dealers' sale, installation, maintenance, and support of Defendant's home security systems to consumers. For instance, in that same June 15, 2015 SEC filing, Defendant states that it provides its dealers with "Sales, Marketing & Training" designed "to help effectively promote and sell the connected home." *Id.* Defendant reaffirmed its involvement in the dealers' sales and marketing of its services: "We provide our service providers with specific training and programs to assist them in selling and providing support for our platform and solutions." Alarm.com Holdings, Inc., Quarterly Report (Form 10-Q) (June 30, 2015). The ties between Defendant and its dealers is even strengthened by Defendant's website, which states: "Dealers have access to a library of marketing materials and sales tools to help promote interactive security solutions."[1] Part of Defendant's strategy for obtaining customers involves the use of an automatic telephone dialing system ("ATDS") and automated or prerecorded messages, which often result in violations of the TCPA. Defendant is aware of its extensive involvement and control of its dealers' sales and telemarketing of Defendant's services, which makes it liable for its dealers' violations of the TCPA. Defendant's June, 2015 SEC filing recognizes its own exposure under the TCPA, stating:

> "Our business, operations and services providers are subject to various U.S. Federal, state and local consumer protection laws, licensing regulation and other laws and regulations…Our advertising and sales practices and that of our services provider network are subject to regulation by the U.S. Federal Trade Commission, or the FTC, in addition to state consumer protection laws. The FTC and the Federal Communications Commission have issued regulations and place restrictions on, among other things, unsolicited automated telephone calls to residential and wireless telephone subscribers by means of

---

[1] https://www.alarm.com/partners/partners_dealer.aspx

automatic telephone dialing systems and the use of prerecorded or artificial voice messages. If our service providers were to take actions in violation of these regulations, such as telemarketing to individuals on the "Do Not Call" registry, we could be subject to fines, penalties, private actions or enforcement actions by government regulators." *Id.*

Based on Defendant's own public records, it is evident that it exercises control over its dealers by retaining the right to discipline and terminate those that use illegal telemarketing.

1. **PLAINTIFF HAS PROPERLY PLEAD FACTUAL CONTENT THAT ALLOWS FOR THE REASONABLE INFERENCE THAT ALARM.COM IS LIABLE FOR THE MISCONDUCT ALLEGED.**

Defendant argues that Plaintiff fails to meet the liberal pleading requirements pursuant to FRCP 12(b)(6). Unfortunately for Defendant, without conceding that Plaintiff's allegations are not plead with particularity, this is a federal notice pleading jurisdiction, meaning that she need not "set out in detail the facts upon which [s]he bases [her] claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957); *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006) (stating that in contrast to fact-pleading standard in Illinois state court, Plaintiff need not allege each specific fact giving rise to claim). Either way, there is nothing vague about Plaintiff's assertions regarding Defendant's liability under the TCPA. Plaintiff has alleged that many of the phone calls were from agents calling on behalf of Alarm.com or other dealers, through which Defendant retains control over. Plaintiff has even included some dates in which she received phone calls from these specific dealers. It is unfair to ask Plaintiff to remember the exact date and time of every one of the 75 alleged phone calls she received, and she is under no obligation to do so. Defendant, as the entity who actually authorized these phone calls through its agents, possesses the ability to search its own records. Plaintiff is not in possession of every recording for every phone call she received from Defendant's dealers, and to require her to show the precise causal relationship for *every* phone call is unfair, especially at the pleading stage

6

without access to the discovery process. This would deprive Plaintiff of the opportunity to prove her case and would violate basic due process fundamentals. Plaintiff is confident that the discovery process will reveal that the calls were placed on behalf of Defendant, and justice requires that she be afforded the opportunity to prove this aspect of her case.

2. **DEFENDANT HAS ENTERED INTO "DEALER AGREEMENTS," WHICH CONTAIN LANGUAGE MAKING IT VICARIOUSLY LIABLE FOR ITS DEALERS' CONDUCT.**

The connection between Defendant and its dealers is much too proximate to not render it liable for its dealers' conduct. For instance, a simple google search reveals that United Security, is just one of the many entities for which Defendant has a direct business relationship with.[2] Public filings, which are readily accessible to all, have shown that Defendant has significant dealings and has entered into dealer agreements with several entities. Defendant wants to reap the benefits of attaining new customers, but yet seeks to avoid liability when it is the entity responsible for its dealers' conduct. Defendant cannot have it both ways. If it wants to use unfair and deceptive behavior to mask its identity to avoid lawsuits, then it cannot expect Plaintiff to file suit against every individual dealer who has placed calls to her. In reality, these calls were placed for the purpose of marketing and selling Defendant's product pursuant to an agreement. In its motion, Defendant even acknowledges that it does not directly place phone calls. Rather, it enters into agreements with agents who place phone calls on its behalf.

Plaintiff concedes that during some phone calls, "Alarm.com" was not necessarily referenced, however, the dealer calling was an agent of Defendant's. If Defendant again attempts to deflect and argue that it should not be vicariously liable for the calls made by its agents, that argument has already been shot down against the same defendant in *Abante Rooter*, 2017 U.S. Dist. LEXIS 69307, at *17, where that court held "Defendants do not persuade. The mere fact that the [third-party dealer] generally

---

[2] https://www.alarm.com/US/usasystems

7

did not mention Alarm.com on the calls does not raise a predominant individual issue. Plaintiffs have provided scripts, which evidence a consistent approach to making telephone calls. [] These scripts have at least two critical common features: (i) none specifically mentions Alarm.com and (ii) all stress that customers can purchase an 'interactive cellular service,' tout its benefits [], and reveal its price. Accordingly, even on phone calls where "Alarm.com" was not specifically mentioned, Defendant is vicariously liable for its dealers' conduct.

Under ordinary principles of agency, Defendant is vicariously liable for the conduct of its dealers, because Defendant directed and/or authorized its dealers' conduct constituting the statutory violations alleged in Plaintiff's Amended Complaint. Defendant established, approved, and/or ratified its dealers' policies and practices. In addition, Defendant accepted the benefits of its dealers' and illegal telemarketing campaigns by accepting fees from new consumer accounts, despite having knowledge that the consumer accounts were generated through the making of illegal telemarketing calls as those being challenged here. Defendant cloaked its dealers with apparent/implied authority to act on its behalf, including but not limited to authorizing them to make marketing telephone calls on its behalf and to advertise that the dealers' products were affiliated with it. Defendant had the authority and responsibility to prevent or correct the unlawful telemarketing practices of its dealers, and it formulated, directed, controlled, and participated in the acts and practices of its dealers that violated the TCPA. Under ordinary principles of vicarious liability, Defendant is liable for the TCPA violations alleged because it was directly involved in, authorized, and/or ratified its dealers' operations that violated the TCPA.

C. **PLAINTIFF HAS PROPERLY PLEAD AN ICFA VIOLATION.**

Plaintiff has not only properly plead the required elements of an ICFA claim, but has also adequately alleged actual damages proximately caused by Defendant's unfair and deceptive acts.

Again, Defendant is seeking to avoid liability after causing concrete harm to Plaintiff in the deceptive harassment campaign it undertook against her.

1. **THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT.**

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. The act is to be liberally construed to effectuate its purpose." *Cripe v. Leiter,* 184 Ill. 2d 185, 191 (1998). "The elements of a claim under the ICFA are: (1) a deceptive *or* unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012) (emphasis added). "Recovery may be had for unfair as well as deceptive conduct." *Saunders v. Michigan Avenue National Bank,* 278 Ill. App. 3d 307, 313 (1996).

Defendant again raises the argument that Plaintiff's allegations do not meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Defendant's argument fails on its face, as Plaintiff has properly alleged that Defendant engaged in deceptive behavior by calling her using various identities which were all attempting to ultimately sell her Defendant's product. Even after Plaintiff notified countless dealers to cease contacting her, Defendant allowed the unlawful activity to continue, in hopes that she would be compelled to purchase its services. Moreover, during one phone call from United Security, which as evidenced above is a direct dealer of Defendant's, Plaintiff told its representative, "I asked twice to be removed, why are you calling me?," and "Remove me from your list." *See* Plaintiff's Amended Complaint ¶28. Defendant's agent responded, "I will take you off the list," and "You will be removed from our database." *Id.* This was deceptive in that Defendant, through its dealer, blatantly lied to Plaintiff, telling her it

9

would remove her from its database and calling list, but yet, continued to contact her. Regardless, Courts have also held that, "When Rule 9(b) is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires, of course, only a short and plain statement of a plaintiff's claim, the former mandates merely that a plaintiff must plead the 'bare bones' of a fraudulent scheme, by supplying 'a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants,' the reason being that under the liberal discovery provisions of the Federal Rules of Civil Procedure, "[m]ore information can be gathered through discovery." *Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 772, 2009 U.S. Dist. LEXIS 66793 (S.D. Ill. 2009).

Again, there is nothing vague about Plaintiff's assertions regarding Defendant's deceptive behavior. Plaintiff has plead that she received countless calls from Defendant's dealers, many of whom purported to be affiliated with Defendant and who were selling Defendant's product. Defendant used dealers with various names in attempts to deceive Plaintiff into continuing to answer her phone and ultimately purchase Defendant's product. Plaintiff has plead the extent of her knowledge at this time, and more information will be gleaned through discovery.

2. **PLAINTIFF HAS ALLEGED ACTUAL DAMAGES UNDER THE ICFA.**

The Illinois Supreme Court has determined that three *independent* factors weigh into the existence of a violation of ICFA under unfairness: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 NE 2d 951, 961 (Ill. 2002). However, the Court held that "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Cheshire Mortgage Service, Inc. v. Montes,* 223 Conn. 80, 106, 612 A.2d 1130, 1143 (1992)). As will be outlined, in

addition to satisfying the other two *Robinson* factors, where it need not satisfy all three, Plaintiff has nonetheless adequately alleged substantial injury based on Defendant's actions. Defendant uses examples from various cases where courts have dismissed ICFA claims where a plaintiff failed to allege actual economic damages, or more than trivial damages. However, these cases only serve as ammunition against Defendant's motion, as the damages are not in line with the facts at hand. For instance, in *Warciak v. One, Inc.*, No. 16 C 7426, 2016 WL 7374278, at *4 (N.D. Ill. Dec. 20, 2016), the alleged harm solely included diminished utility of phone, and allegations of battery loss and electricity costs. Another case which Defendant cites to is *Nelson v. Ashford Univ., LLC*, No. 16-cv-3491, 2016 WL 4530325, at *3, where the court dismissed an ICFA claim, finding allegations of increased cell phone usage and decrease data storage not actionable. All of the cases cited by Defendant are factually distinguishable as they do not encompass the full set of damages that are present in this set of circumstances. To show actual damages, "plaintiff must [show] that she has been harmed in a concrete, ascertainable way…D]efendant's alleged deception must have affected plaintiff in a way that made her tangibly worse off." *Wiegel v. Stork Craft Mfg.*, 780 F. Supp. 2d 691, 2011 U.S. Dist. LEXIS 7807 (N.D. Ill. 2011). Here, Plaintiff has plead that due to Defendant's unlawful actions, she has suffered *financial loss* and concrete harm, including but not limited to, invasion of privacy, aggravation, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending phone calls, increased usage of her telephone services, loss of cell phone capacity, diminished cell phone functionality, decreased battery life, and diminished space for data storage on their cell phone. *See* Plaintiff's Amended Complaint ¶¶ 41-43. Plaintiff has clearly demonstrated that she has been harmed in a concrete, ascertainable way. Defendant's unfair and deceptive conduct has harassed Plaintiff and caused her damages which have made her tangibly worse off.

Defendant further argues that Plaintiff's injuries are minimal, or "*de minimis*," however, courts have also found "the application of the de minimis doctrine to be in conflict with the ILCFA's remedial purpose. To find otherwise would permit defendants to freely engage in unfair practices so long as the effects were 'thinly' spread out over a large population of victims. *Spiegel v. Engagetel*, 2016 U.S. Dist. LEXIS 134254, at *20-21 (N.D. Ill. Sept. 29, 2016). *See Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008) (loss of computer paper and toner from unwanted fax was an injury); *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 475 N.E.2d 1024, 1029, 86 Ill. Dec. 645 (Ill. Ct. App. 1985) (overcharging customers only a few cents each can cause substantial losses when taken in the aggregate). While Defendant also cites to *Battle v. Bridgepoint Educ., Inc.*, No. 16 CV 9513, 2017 U.S. Dist. LEXIS 26576, *3-5, to "bolster" its argument, but other Judges in this same circuit have ruled otherwise. For instance, when ruling on a defendant's motion to dismiss an ICFA count, Judge Kennelly stated, "the [ICFA] is a consumer fraud statute and the – it's known by pretty much anybody, and you have to figure that legislatures who draft these laws know this, is that in a lot of consumer fraud cases or what is called consumer fraud under that statute, which doesn't just include fraud, but it also includes unfair practices, is going to include small amount of money. And I recognize that there are a couple of judges who have found – one apparently found that 90 bucks isn't enough and one that apparently found that 400 bucks isn't enough. I just don't agree with that. I just think it's dead wrong. *Klimek v. Verde Energy USA, Inc.* No. 17-cv-00817 (N.D. Ill. Mar. 28, 2017) (transcript of proceedings denying Defendant's motion to dismiss)[3].

Lastly, courts have recognized that any usage of minutes on Plaintiff's cell phone plan, whether or not prepaid, may constitute an actual injury under the TCPA. *See Warnick v. Dish*

---

[3] *See* attached Exhibit A, for a true and correct copy of the transcript of proceedings in *Klimek v. Verde Energy USA, Inc.* No. 17-cv-00817 (N.D. Ill. Mar. 28, 2017).

*Network LLC*, Civil Action No. 12-cv-01952-WYD-MEH, 2014 U.S. Dist. LEXIS 138381, at *44-46 (D. Colo. Sep. 30, 2014); *Fini v. DISH Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013); *Lee v. Credit Management*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011). The court in *Warnick* looked to the guidance of the Federal Communications Commission, which stated that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Wireless subscribers who purchase a large 'bucket' of minutes at a fixed rate nevertheless are charged for those minutes[.]" *Warnick*, 2014 U.S. Dist. LEXIS 138381, at *45 (quoting *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14115 (2003)). *See also In re Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007) ("wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used"). The same principles hold true under the ICFA: where Defendant's actions take away from the value of Plaintiff's cell phone plan, battery life, storage, or functionality with such frequent calling, it amounts to actual damages. At minimum, the impact on the functionality of Plaintiff's phone and the value of their cell phone plan is a question of fact inappropriate for resolution at the motion to dismiss stage. Defendant neglectfully fails to address the totality of the enumerated economic injuries that Plaintiff has alleged, and these damages are substantial enough to support her claims for unfairness under the ICFA.

    3. **PLAINTIFF HAS ALLEGED AN UNFAIR AND/OR DECEPTIVE PRACTICE.**

As explained above, recovery may be had for unfair as well as deceptive practices. Plaintiff has already established that she suffered substantial injury, and as will be explained below, she has also properly plead that Defendant's conduct undeniably violates public policy, and is immoral, unethical, and unscrupulous, thus satisfying the remaining *Robinson* factors.

    i.    **Defendant's Actions Offend Public Policy**

Illinois' public policy against Defendant's harassment of Plaintiff is so clear that the state enshrined a ban on nearly identical behavior in a statute. The Illinois Telephone Solicitations Act states that "[i]t is a violation of this Act to continue with a solicitation placed by a live operator without the consent of the called party." 815 ILCS 413/25. Plaintiff here never consented to receive calls from Defendant, and yet, she still explicitly told Defendant to stop contacting her. It defies logic to think that Illinois public policy would have a favorable view of a call placed by an auto-dialer, as it renders the call less personal and consequently more offensive to public policy.

Defendant's calls also meet the criteria for violation of the TCPA. This Court has previously determined that violations of federal law—and specifically the TCPA—offend public policy for purposes of applying ICFA. *See G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929, 935 (N.D. Ill. 2009) (finding that an unsolicited fax advertisement violates the TCPA and is presumptively against public policy). The question of public policy, therefore, even on its own, strongly supports Defendant's liability under ICFA.

      ii.    **Defendant's Actions Were Oppressive**

"Conduct is oppressive only if it imposes a lack of meaningful choice or an unreasonable burden on its target." *Centerline Equipment Corp. v. Banner Personnel Service, Inc.,* 545 F.Supp.2d 768, 780 (N.D. Ill. 2008) (finding one unsolicited fax to be oppressive under ICFA). Here, Plaintiff received at least 75 unconsented calls to her cell phone *after* registering her phone number on the DNC list and demanding that the calls cease. Clearly, Plaintiff had no meaningful choice in receiving the calls placed by Defendant's dealers, and had to submit to them against her desires. Defendant's actions are not the one page faxes sent to numerous recipients: both the means and the volume directed to a single person render its calls oppressive by any standard. Especially when taking into account the variety of phone numbers and trade names Defendant used through

its agents to call Plaintiff's cell phone, Defendant's behavior is oppressive in that it seeks to harass Plaintiff into submission by forcing her to answer calls from different phone numbers and names with the hope that she would be compelled to purchase Defendant's services. The TCPA provides heightened protection for cell phones because of the intrusive nature of calls to a phone that one is likely to carry at all times. 47 U.S. Code §227(b)(A)(iii). Numerous courts have determined that call volume similar to that received by Plaintiff may be harassment. *See, e.g., Schumacher v. Credit Prot. Ass'n,* No. 4:13-cv-00164-SEB-DML, 2015 U.S. Dist. LEXIS 132752, at *31 (S.D. Ind. Sep. 30, 2015) (calls at least twice per week over a period of two and a half months could be harassment). As a result, Plaintiff has sufficiently plead that Defendant's conduct was oppressive, thus satisfying all three *Robinson* factors.

## II. CONCLUSION

To raise a right to relief above the speculative level, Plaintiff need not allege each specific fact giving rise to her claim. Simply because Defendant uses a wide-array of dealers to do its dirty work, it is attempting to avoid liability. Plaintiff should not be punished for Defendant's deceptive manner in conducting its business. However, as conveyed throughout this response, Defendant is directly involved in the unfair and deceptive behavior which caused Plaintiff substantial harm, and accordingly, Plaintiff has stated cognizable claims under the TCPA and the ICFA.

WHEREFORE, Plaintiff, TARANEH VESSAL, respectfully requests this Honorable Court enter an order denying Defendant's Motion to Dismiss Plaintiff's Amended Complaint in its entirety, and for any other relief just and appropriate.

Dated: July 31, 2017                      Respectfully submitted,

<u>s/ Taxiarchis Hatzidimitriadis</u>
Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181 x110 (phone)
(630) 575-8188 (fax)
thatz@sulaimanlaw.com

**CERTIFICATE OF SERVICE**

  The undersigned, one of the attorneys for Plaintiff, certifies that on July 24, 2017, he caused a copy of the foregoing, **PLAINTIFF'S RESPONSE TO DEFENDANT ALARM.COM'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**, to be served electronically via CM/ECF system on:

John F. Kloecker
Martin W. Jaszczuk
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
jkloecker@jaszczuk.com
mjaszczuk@jaszczuk.com

           Respectfully submitted,

           s/ Taxiarchis Hatzidimitriadis
           Taxiarchis Hatzidimitriadis, Esq. #6319225
           Counsel for Plaintiff
           Sulaiman Law Group, Ltd.
           2500 S. Highland Avenue, Suite 200
           Lombard, IL 60148
           (630) 575-8181 x110 (phone)
           (630) 575-8188 (fax)
           thatz@sulaimanlaw.com